# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

### MISSOULA DIVISION

| | |
|---|---|
| JOHN L. HARTSOE,<br><br>          Plaintiff,<br><br>     vs.<br><br>DONNA HEISEL, MIKE GEHL, LUCKY LARSON, DEBRA CHRISTOPHER, CHUCK WALL, MARK RUSSELL, KENNETH MAUGHAN, OFFICER TODD, DERRICK THRODEN, SANDY VAN SKYOCK, and JOHN DOES 1-3,<br><br>          Defendants. | Cause No.  CV 11-0017-M-DWM-JCL<br><br><br>ORDER AND FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This matter comes before the Court on Plaintiff John Hartsoe's Motion to Proceed in Forma Pauperis (Dkt. 1) and proposed Complaint. (Dkt. 2).  This action presents a controversy over whether Defendants, acting under color of state law, violated Hartsoe's federal constitutional rights thereby subjecting Defendants to liability under 42 U.S.C. § 1983.  Accordingly, the case presents a federal question over which the Court possesses jurisdiction pursuant to 28 U.S.C. § 1331.

After conducting the prescreening process mandated by 28 U.S.C. § 1915 and 28 U.S.C. § 1915A, the Court finds that Hartsoe's allegations fail to state a claim upon which relief may be granted.  The defects in the claims set forth in paragraphs 25, 27-32, and 34-36 cannot be cured by further amendment and they will be recommended for dismissal.  Hartsoe will be given an opportunity to amend the claims listed in paragraphs 22-24, 26, and 33.

## I.  MOTION TO PROCEED IN FORMA PAUPERIS

Hartsoe submitted a declaration and account statements sufficient to make the showing required by 28 U.S.C. §1915(a).  Accordingly, the request to proceed in forma pauperis will be granted.  28 U.S.C. § 1915(a).

Pursuant to 28 U.S.C. § 1915(b)(1), Hartsoe is required to pay the statutory filing fee for this action of $350.00.  Hartsoe has insufficient funds to pay an initial partial filing fee but he will be required to make monthly payments of 20 percent of the preceding month's income credited to his institutional account.  The percentage is set by statute and cannot be altered.  *See* 28 U.S.C. § 1915(b)(2).  By separate order, the agency having custody of Hartsoe will be directed to forward payments from Hartsoe's account to the Clerk of Court each time the amount in the account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. § 1915(b)(2).

## II.  STATEMENT OF CASE

## A.    Parties

Hartsoe is a state prisoner proceeding without counsel.  He is currently

incarcerated at Cascade County Detention Center in Great Falls, Montana.

The named Defendants are:  Donna Heisel, Hartsoe's former wife; Mike

Gehl, a detective with the Lake County Sheriff's Department; Lucky Larson,

Sheriff of Lake County; Debra Christopher, District Court Judge for Lake County;

Chuck Wall, Justice of the Peace for Lake County; Mark Russell, Assistant District

Attorney for Lake County; John Does 1-3, police officers with the St. Ignatius

Police Department, the Lake County Sheriff's Department, and a tribal officer for

the Salish and Kootenai Indian Reservation; Officer Kenneth Maughan, Officer

Todd, and Officer Derrick Throden, detention officers at the Lake County

Detention Center; and Sandy Van Skyock, probation and parole officer with the

Montana Department of Probation and Parole.

## B.    Factual Background and Allegations

This lawsuit arises out of two incidents between Hartsoe and his estranged

wife, Donna Heisel, ultimately resulting in Hartsoe's conviction for aggravated

assault.  The first incident occurred on March 20, 2008 when Hartsoe had a verbal

argument with Ms. Heisel.  At some point Ms. Heisel left and Defendants Gehl,

and John Does 1-3 responded to the property.  When the officers arrived, Hartsoe

put his hands up and said, "I'm no threat to you, She lied, please leave my property."  Ultimately, John Doe #1 tased Hartsoe twice and Hartsoe was arrested on numerous charges which were later dismissed.  (Dkt. 2, p. 13).      Based upon this first incident, Hartsoe alleges Ms. Heisel filed a false police report and conspired with Detective Gehl to get Hartsoe arrested (Dkt. 2, p. 12, ¶ 22) and John Does 1-3 and Detective Gehl conspired to arrest Hartsoe (Dkt. 2, p. 12, ¶ 23), assaulted him, and lied in police reports.  (Dkt. 2, p. 12, ¶ 24).

The second incident occurred in May 2008 when "Heisel attacked Hartsoe with a board upon which Hartsoe had struck Heisel twice."  (Dkt. 2, p. 14). Hartsoe was charged with aggravated assault, violation of a protective order, assault with a weapon, and kidnapping as a result of this incident.  Based upon this incident, Hartsoe alleges Ms. Heisel assaulted him, filed false police reports, and solicited him to commit suicide.  (Dkt. 2, p. 12, ¶ 25).

On June 23, 2008, Hartsoe met with Sheriff Lucky Larson after which Hartsoe surrendered himself on new charges and was taken to a holding cell to await arraignment.  Bail was listed at $50,000.00 in the warrant given to Hartsoe. Hartsoe appeared before Justice of the Peace Wall and Lake County Deputy Attorney Russell showed Justice of the Peace Wall some photos.  Justice of the Peace Wall then set Hartsoe's bail at $150,000.00.  Based upon these facts, Hartsoe

4

contends Defendants Larson, Wall, and Russell conspired to raise the bail in his criminal case and Sheriff Larson violated his right to individual dignity.  (Dkt. 2, p. 12, ¶¶ 26 and 33).

On September 14, 2009, Hartsoe appeared before Judge Christopher.  When he, "took his right to remain silent," Judge Christopher had Hartsoe arrested for contempt of court by Detention Officers Maughan and Todd.  Hartsoe was taken to a holding cell and released before he could call a bail bondsman.  Based upon this arrest, he contends Judge Christopher and Defendants Maughan and Todd illegally arrested him in violation of his right to due process.  (Dkt. 2, p. 12, ¶¶ 29 and 30).

During Hartsoe's November 9, 2010 criminal trial, Judge Christopher again had Hartsoe arrested for contempt of court.  This time he was brought back into court in shackles and a restraining chair.  Thereafter, he was held in custody in the Lake County Jail for the duration of his criminal trial.  He contends Judge Christopher violated his right to counsel, his right to due process, his right to individual dignity, his right to reasonable bail, and arrested him and tried to blame the sheriff's deputies.  (Dkt. 2, p. 12, ¶¶ 27-29, 31, 32, 34).

While in jail, Defendant Throden had Hartsoe placed in isolation and told Hartsoe he would not be returned to the cell block until Hartsoe ate some food and quit giving it away.  Hartsoe told Throden he was not giving the food away but was

trading what he could not eat for fruits and vegetables.  When Hartsoe did eat food, he got sick to his stomach.  On the second day, Throden moved Hartsoe back to the cellblock.  Hartsoe seeks to hold Defendant Throden liable for putting him in an isolation cell and forcing him to eat.  (Dkt. 2, p. 12, ¶ 35).

On February 25, 2010, Hartsoe was convicted in a jury trial of aggravated assault and misdemeanor violation of a protective order arising from the May 2008 incident.  He was sentenced to 20 years in prison and six months in jail with all but 60 days suspended, to be served concurrently.  *Hartsoe v. Montana*, OP 10-0278 (Mont S.Crt. July 28, 2010).[1]  Hartsoe's conviction is pending on appeal. ([www.supremecourtdocket.mt.gov).](www.supremecourtdocket.mt.gov)

In March 2010, after his conviction and while incarcerated in Sanders County Jail, Hartsoe sent a request for an application for a public defender.  At some point he was taken out of his cell and put into a holding cell.  While there, Defendant Sandy Van Skyock, a probation officer, told Hartsoe he needed to apply for sentence review.  Hartsoe never received an application for a public defender. (Dkt. 2, pp. 16-17).  Based upon these facts, Hartsoe alleges Defendant Van Skyock violated his right to counsel.  (Dkt. 2, p. 12, ¶ 36).

---

[1]A court may take judicial notice of its own as well as other courts' records. *See, e.g.*, *Rand v. Rowland*, 154 F.3d 952, 961 (9th Cir. 1998) (en banc); *Zolg v. Kelly* (*In re Kelly*), 841 F.2d 908, 911 n.1 (9th Cir. 1988).

6

On June 10, 2010, Hartsoe filed a petition for writ of habeas corpus with the Montana Supreme Court alleging he had been denied his right to bail, his right to counsel, his right to a jury trial, and his right to an impartial judge.  The Montana Supreme Court addressed Hartsoe's claims regarding denial of bond pending appeal and indicated that issues relating to the severity of the sentence should be presented to the Sentence Review Division.  The Court left all others issues to be considered on direct appeal.  *Hartsoe v. Montana*, OP 10-0278 (Mont S.Crt. July 28, 2010).

## III. SCREENING PER 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § 1915A

As Hartsoe is a prisoner proceeding in forma pauperis against governmental officers, his Complaint is subject to screening under 28 U.S.C. § 1915 and 28 U.S.C. § 1915A.  Sections 1915A(b) and 1915(e)(2)(B) allow for the dismissal of a pro se prisoner complaint before it is served upon the defendants if it is frivolous, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989).  A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief."  *Bell*

7

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d

929 (2007) (quotation omitted).  Rule 8(a)(2) requires a complaint to "contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal quotation

marks omitted).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se*

complaint, however inartfully pleaded, must be held to less stringent standards than

formal pleadings drafted by lawyers'."  *Erickson v. Pardus*, 551, U.S. 89, 127 S.Ct.

2197, 2200, 167 L.Ed.2d 1081 (2007); *Cf.* Fed.R.Civ.P. 8(f) ("All pleadings shall

be so construed as to do substantial justice").

Although the statute requires a dismissal for the reasons stated, it does not

deprive the district court of its discretion to grant or deny leave to amend.  *Lopez v.*

*Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  The court can decline to grant leave to

amend if "it determines that the pleading could not possibly be cured by the

allegation of other facts."  *Lopez*, 203 F.3d. at 1127 (*quoting Doe v. United States*,

58 F.3d 494, 497 (9th Cir. 1995)).  Leave to amend is liberally granted to pro se

litigants unless it is "absolutely clear that the deficiencies of the complaint could

not be cured by amendment."  *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)

(*citing Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)).

8

All claims set forth in paragraphs 25, 27-32, and 34-36 will be recommended for dismissal.  Hartsoe will be given an opportunity to amend paragraphs 22-24, 26, and 33.

## IV.  CLAIMS RECOMMENDED FOR DISMISSAL

### A.  Paragraph 25:  May 2008 Incident

Paragraph 25 of the Complaint alleges Ms. Heisel assaulted Hartsoe, filed a false police report, and solicited Hartsoe to commit suicide.  (Dkt. 2, p. 12, ¶ 25). The Court presumes Mr. Hartsoe is referring to the May 2008 incident which Mr. Hartsoe describes as "Heisel attacked Hartsoe with a board upon which Hartsoe had struck Heisel twice."  (Dkt. 2, p. 14, ¶ 45).  Mr. Hartsoe was convicted of aggravated assault and violation of a protective order based upon these incidents.

These allegations fail to state a federal claim upon which relief may be granted because Ms. Heisel is not a "state actor."  Liability under section 1983 exists where a defendant "acting under the color of law" has deprived the plaintiff "of a right secured by the Constitution or laws of the United States." *Jensen v. Lane County*, 222 F.3d 570, 574 (9th Cir. 2000).  Generally, private parties do not act under color of State law.  *Price v. State of Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991).

The incident in May 2008 was purely a private incident involving two private individuals.  There is no indication that Ms. Heisel's actions in May 2008 were at all related to state action.  As such, Hartsoe cannot establish state action regarding the May 2008 incident and his allegations fail to state a federal claim. This claim will be recommended for dismissal.

### B.  Paragraphs 26-29, 31, 32, 34:  Judicial Immunity

Mr. Hartsoe has set forth a number of claims against Judge Christopher and Justice of the Peace Wall.  These Defendants are both entitled to judicial immunity for all actions arising from their judicial activities regarding Hartsoe's court proceedings.  Judges are absolutely immune from suit for judicial actions taken by them in the course of their official duties in connection with a case, unless the judge acts outside the judge's judicial capacity or in the complete absence of all jurisdiction.  *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).  For purposes of judicial immunity, "[a] clear absence of all jurisdiction means a clear lack of subject matter jurisdiction."  *Mullis v. United States Bankruptcy Court*, 828 F.2d 1385, 1389 (9th Cir. 1987).  The Supreme Court has held that as long as a judge has jurisdiction to perform the "general act" in question, he or she is immune "however erroneous the act may have been,  . . .  however injurious in its consequences it may have proved to the plaintiff" and irrespective of the judge's motivation.  *Cleavinger v. Saxner*,

474 U.S. 193, 199-200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985).  Justice of the Peace

Wall's conduct during Hartsoe's arraignment and Judge Christopher's conduct

during Hartsoe's other court proceedings are clearly within their official duties.

These judges had subject-matter jurisdiction over Hartsoe's court proceedings and

they are entitled to judicial immunity from monetary damages.  As such, Judge

Christopher and Justice of the Peace Wall and all claims set forth against them in

paragraphs 26-29, 31, 32, and 34 will be recommended for dismissal.

### C.  Paragraph 26:  Prosecutorial Immunity

County Attorney Mark Russell is entitled to absolute prosecutorial

immunity.  Prosecutorial immunity protects eligible government officials who

perform functions "intimately associated with the judicial phase of the criminal

process."  *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128

(1976).  "Such immunity applies even if it leaves the genuinely wronged [plaintiff]

without civil redress against a prosecutor whose malicious or dishonest action

deprives him of liberty."  *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir.

1986)(en banc).  Acts undertaken by a prosecutor "in preparing for the initiation of

judicial proceedings or for trial, and which occur in the course of his role as an

advocate for the State," are entitled to the protection of absolute immunity.  *Kalina*

*v. Fletcher*, 522 U.S. 118, 126 (1997).

11

Hartsoe's only allegation against Mr. Russell is that he showed Justice of Peace Wall some photos during what is presumed to be Hartsoe's arraignment. (Dkt. 2, p. 14, ¶ 47). Actions taken during a preliminary hearing and/or arraignment clearly arise from Mr. Russell's duties as a deputy Lake County Attorney. These are functions associated with the judicial phase of the criminal proceedings. As such, Mr. Russell is entitled to immunity and all claims against him will be recommended for dismissal.

### D. Paragraph 30: Illegal arrest for Contempt of Court

Paragraph 30 of Hartsoe's Complaint alleges Defendants Maughan and Todd illegally arrested Hartsoe in violation of his right to due process. Factually, Hartsoe alleges that on September 14, 2009, Hartsoe appeared in Judge Christopher's court and "took his right to remain silent." Judge Christopher then had Hartsoe arrested for contempt of court. Hartsoe was arrested by Defendants Maughan and Todd and taken to a holding cell. He was released soon thereafter.

The United States Supreme Court has held that false arrest claims require "detention without legal process." *Wallace v. Kato*, 549 U.S. 384, 127 S.Ct. 1091, 1095, 1096 (2007). Mr. Hartsoe was arrested at the order of Judge Christopher based upon actions in her court room. Therefore, there was legal process and he has no false arrest claim against Defendants Maughan or Todd.

12

### E.  Paragraph 35:  Placement in Isolation Cell

Paragraph 35 of Hartsoe's Complaint alleges Defendant Throden put Hartsoe in an isolation cell and forced him to eat.  When a detainee challenges some aspect of his pretrial detention that is not alleged to violate any express guarantee of the Constitution, the issue to be decided is the detainee's right to be free from punishment.  *Bell v. Wolfish*, 441 U.S. 520, 533, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).  As explained by the Supreme Court in *Bell*, "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."  *Bell*, 441 U.S. at 535.

While the Due Process Clause protects pretrial detainees from punishment, not every disability imposed during pretrial detention constitutes "punishment" in the constitutional sense.  *Bell*, 441 U.S. at 537.  Thus, the test to be applied in determining whether particular restrictions and conditions imposed as a result of pretrial detention amount to punishment in the constitutional sense is whether there was an express intent to punish, or "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  *Bell*, 441 U.S. at 538 (*quoting Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).

13

Defendant Throden put Hartsoe in isolation in an attempt to get Hartsoe to eat.  Hartsoe was moved back to the cellblock the next day.  Placing an inmate in an isolation cell for one day and requiring him to eat does not rise to the level of punishment and Hartsoe's placement in the isolation cell for one night does not appear excessive in this instance.  These allegations fail to state a claim upon which relief may be granted.  This is not a defect which could be cured by the allegation of additional facts and therefore, this claim should be dismissed.

### F.  Paragraph 36:  Violation of Right to Counsel

Paragraph 36 alleges Defendant Van Skyock violated Hartsoe's right to counsel when she suggested he apply for sentence review.  The Sixth Amendment to the United States Constitution provides:  "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  Advising an inmate to go to sentence review does not violate ones' right to counsel.

Hartsoe also alleges he sent his request for a public defender to staff at the Sanders County Jail.  He does not explain how Defendant Van Skyock (a probation and parole officer) is responsible for the jail staff's failure to provide him an application for a public defender.  The Court cannot conceive how these facts

could give rise to a plausible federal claim against Defendant Van Skyock and as such she will be recommended for dismissal.

## V.  CLAIMS WHICH MAY BE AMENDED

### A.  Paragraphs 22-24:  False Arrest

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const., Amend. IV.  "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification."  *Dubner v. City and County of San Francisco*, 266 F.3d 959, 964-65 (9th Cir. 2001) (citation omitted).  "Probable Cause exists when the facts and circumstances within the officer's knowledge are sufficient to cause a reasonably prudent person to believe that a crime has been committed."  *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1053 (9th Cir. 2009). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001).

"The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense

for which he is arrested [or not charged with a crime at all] is irrelevant to the validity of the arrest. We have made clear that the kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) (citations omitted).

Hartsoe has not alleged sufficient facts to determine whether he has stated a claim for false arrest.  Hartsoe does not explain the circumstances surrounding the arrest, he does not explain what the charges were, or why he contends they were false.  The Court is a bit leery of the validity of this claim given that the officers were apparently responding to a 911 call and it appears a protective order was issued as a result of the March 2008 incident.  Nevertheless, it will allow Hartsoe an opportunity to provide additional factual information including but not limited to details regarding his actions, the actions of the officers, the charges brought against him, and why those charges were dismissed.

### B.  Paragraphs 22-23:  Conspiracy

In paragraphs 22 and 23 of the Complaint, Hartsoe alleges Ms. Heisel, Detective Gehl, and the John Doe Defendants conspired to arrest Hartsoe.  Hartsoe alleges that Heisel had numerous phone calls with Gehl prior to the March 2008 incident and that Heisel made false reports to the police.

16

A private party may be acting under color of law if they conspire with or engage in joint activity with State officials, become so closely related with the State that their action can be said to be those of the State, are performing public functions, or are regulated to the point that the conduct is compelled by the State. *Price v. State of Hawaii*, 939 F.2d 702, 708-09 (9th Cir. 1991).  In order to allege a conspiracy under § 1983, a plaintiff must show "an agreement or 'meeting of the minds' to violate constitutional rights."  *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (*citing United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc)).  "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."  *Franklin*, 312 F.3d at 441. This agreement or meeting of the minds may be inferred on the basis of circumstantial evidence, such as the actions of the defendants.  *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999).

Providing false information to the police does not transform a private individual into a state actor.  *See Daniel v. Ferguson*, 839 F.2d 1124, 1130 (5th Cir. 1988) ("Police reliance in making an arrest on information given by a private party does not make the private party a state actor."); *Gilbert v. Feld*, 788 F.Supp. 854, 859-60 (E.D.Pa. 1992) (providing district attorney's office with false and

misleading information in order to instigate criminal charges against arrestee does not expose private parties to Section 1983 liability).  But evidence that police failed to exercise independent judgment may support an inference of conspiracy with a private party.  *See Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 435-36 (7th Cir. 1986) (police agreement to arrest anyone designated by shopkeeper constitutes conspiracy), cert. denied, 481 U.S. 1028, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987).

Hartsoe's Complaint merely states, in a conclusory fashion, that Defendants conspired to deprive him of his constitutional rights.  As with the false arrest claim, Mr. Hartsoe must give more factual detail explaining how these defendants allegedly conspired with each other.

### C.  Paragraph 24: Excessive Force

In paragraph 24 of the Complaint, Hartsoe alleges he was assaulted by Detective Gehl and the John Doe Defendants.  The only factual allegation regarding an assault is Hartsoe's statement that he was tased by John Doe #1.  This allegation, by itself, is insufficient to state a federal claim for relief.

A claim that a law enforcement officer used excessive force in the course of an arrest or other seizure is analyzed under the Fourth Amendment reasonableness standard.  *See Graham v. Connor*, 490 U.S. 386, 394-95, 109 S.Ct. 1865, 104

L.Ed.2d 443 (1989); *Forrester v. City of San Diego*, 25 F.3d 804, 806 (9th

Cir.1994), cert. denied, 513 U.S. 1152, 115 S.Ct. 1104, 130 L.Ed.2d 1070 (1995).

"Determining whether the force used to effect a particular seizure is 'reasonable'

under the Fourth Amendment requires a careful balancing of 'the nature and quality

of the intrusion on the individual's Fourth Amendment interests' against the

countervailing governmental interests at stake." *See Graham*, 490 U.S. at 396

(citations omitted).

Last year the Ninth Circuit decided several cases dealing with § 1983

excessive force claims against police officers' using a Taser. *See Mattos v.*

*Agarano*, 590 F.3d 1082 (9th Cir. 2010) ( per curiam ) (holding that the use of a

Taser in stun mode on a suspected domestic violence victim while attempting to

arrest her husband did not amount to excessive force); *Bryan v. McPherson*, 630

F.3d 805 (9th Cir. 2010) (holding that shooting a Taser's electrical dart into a

bizarre-acting, half-naked plaintiff providing no resistance or threat to the officer

after plaintiff was stopped for a seatbelt violation constituted excessive force but

the officer was entitled to qualified immunity because "a reasonable officer

confronting the circumstances faced by [the officer] on July 24, 2005, could have

made a reasonable mistake of law in believing the use of the [T]aser was

reasonable.").  In order to determine whether Hartsoe's allegations are sufficient to

state a claim under these cases, Hartsoe must provide the Court with additional

factual background regarding his arrest, including what he was arrested for, when

the "assault" occurred (before or after the arrest), what precipitated the tasing, etc.

### D.  Paragraphs 26:  Sheriff Larson

Paragraph 26 alleges that Defendants Larson, Wall, and Russell conspired to

raise the bail in Hartsoe's criminal matter.  As set forth above, Defendants Wall and

Russell are entitled to immunity and will be recommended for dismissal.

Therefore, the Court will only consider whether Hartsoe's allegation that Defendant

Larson conspired to raise his bail states a claim for relief.  Hartsoe alleges he met

with Sheriff Larson on June 23, 2008 regarding his criminal charges.  During this

meeting, Hartsoe informed the Sheriff that he would make bond and then look into

suing the Sheriff.  Thereafter, Hartsoe surrendered himself and was taken to jail.

Hartsoe contends his bail had been set at $50,000 but when he appeared before

Defendant Wall his bail was raised to $150,000.00.  (Dkt. 2, p. 14, ¶¶ 46-47).

Hartsoe seems to imply that Sheriff Larson conspired with or somehow

caused Justice of the Peace Wall to set a higher bail.  As set forth above,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  *Iqbal*, 129 S.Ct. at 1949.  Hartsoe has not

set forth sufficient facts to state a federal claim in this regard.

20

The Eighth Amendment provides all criminal defendants a right to be free from excessive bail.  Violation of that right can give rise to a claim under 42 U.S.C. § 1983.  *See Galen v. County of Los Angeles*, 477 F.3d 652, 656 (9th Cir. 2007).  In order to do so, Mr. Hartsoe has the burden of showing his bail was excessive and that Defendant Larson was the actual and proximate cause of the bail enhancement. *Galen*, 477 F.3d at 663.  "Pursuant to traditional tort law principles of causation, which we apply to § 1983 claims, a judicial officer's exercise of independent judgment in the course of his official duties is a superseding cause that breaks the chain of causation linking law enforcement personnel to the officer's decision."  *Galen*, 447 F.3d at 663 (citations omitted).  In *Galen*, the Ninth Circuit cited with approval *Walden v. Carmack*, 156 F.3d 861, 874 (8th Cir. 1998).  In *Walden*, the Eighth Circuit held that a sheriff could not be liable under section 1983 for violating the plaintiffs' right to be free from excessive bail, even if he recommended a bail amount to the judicial officer who set plaintiffs' bail, because "setting the bail bond is entirely at the discretion of the presiding judge."  *Walden*, 156 F.3d 861, 874 (8th Cir. 1998).

Thus, Sheriff Larson can be held liable for Hartsoe's allegedly excessive bail only if he prevented Justice of the Peace Wall from exercising his independent judgment.  *See Smiddy v. Varney*, 665 F.2d 261, 266-67 (9th Cir. 1981), as

21

amended (police officers may be liable for a falsely imprisoned arrestee's continued detention after a prosecutor charges the arrestee only if they cause the prosecutor to act contrary to his independent judgment).  In order to present a plausible claim, Hartsoe must show that Sheriff Larson deliberately or recklessly misled Justice of the Peace Wall and that his bail would not have been unconstitutionally excessive but for Sheriff's Larson's misrepresentations.  *Galen*, 447 F.3d at 663-64.

There is no allegation that Sheriff Larson influenced Justice of the Peace Wall or that he was even present when the bail was set.  Therefore, Hartsoe's current allegations in this regard fail to state a claim upon which relief may be granted.  Nevertheless, out of an abundance of caution, Hartsoe will be given an opportunity to amend this claim.

## V.  CONCLUSION

### A.  Leave to Amend

Hartsoe's claims, as currently plead, fail to state a claim upon which relief may be granted.  The following claims cannot be cured by the allegation of additional facts and therefore will be recommended for dismissal:  (1) all claims against Defendant Heisel regarding the May 2008 incident as alleged in paragraph 25 of Hartsoe's Complaint; (2) all claims against Judge Christopher and Justice of

the Peace Wall as set forth in paragraphs 26-29, 31, 32, and 34; (3) all claims

against Mr. Russell as set forth in paragraph 26; (4) all false arrest claims against

Defendants Maughan and Todd as set forth in paragraph 30; (5) all claims against

Defendant Throden regarding Hartsoe's placement in an isolation cell as set forth in

paragraph 35; and (6) all claims against Defendant Van Skyock regarding a denial

of his right to counsel as set forth in paragraph 36.

The remainder of Hartsoe's claims also fail to state a claim but there is a

possibility these claims could be cured by the allegation of additional facts.

Therefore, Hartsoe may file an amended complaint.

In any amended complaint, Hartsoe must write short, plain statements telling

the Court:

(1) the constitutional right he believes was violated;

(2) the name of the defendant(s) who violated the right;

(3) exactly what <u>each</u> defendant did or did not do;

(4) how what the defendant did or did not do caused a violation of his

constitutional rights;

(5) when the alleged actions took place; and

(6) what injury he suffered because of that defendant's conduct.

*Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

23

Hartsoe must repeat this process for each defendant.  If Hartsoe fails to affirmatively link the conduct of a defendant with an injury suffered, the allegation against that defendant will be dismissed for failure to state a claim.  Conclusory allegations that a group of defendants violated a constitutional right are not sufficient to state a claim and will be dismissed.

The amended complaint will take the place of the original complaint.  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990); *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).  Therefore, the amended complaint must be complete in itself without reference to any prior pleading.

### B.  Address Changes

At all times during the pendency of this action, Hartsoe SHALL IMMEDIATELY ADVISE the Court of any change of address and its effective date.  Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS." The notice shall contain only information pertaining to the change of address and its effective date, except if Hartsoe has been released from custody, the notice should so indicate.  The notice shall not include any motions for any other relief. Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

24

### C.  Possible "Strike"

If Hartsoe's amended complaint fails to state a claim upon which relief may be granted, the dismissal could count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g).  Under the 3-strikes provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis under 28 U.S.C. § 1915 "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.  28 U.S.C. § 1915(g).

### D.  Possible Dismissal

If Hartsoe fails to timely comply with every provision of this Order, the Court may dismiss this action.  *See Ferdik*, 963 F.2d at 1260-61 (a district court may dismiss an action for failure to comply with any order of the Court).

Based on the foregoing, the Court issues the following:

### ORDER

1.  Hartsoe's Motion to Proceed in forma pauperis (Dkt. 1) is granted.  The Clerk shall file the Complaint without prepayment of the filing fee and edit the text

of the docket entry for the Complaint to remove the word "LODGED."  The

Complaint is deemed filed on January 25, 2011.

2.  On or before March 31, 2011, Hartsoe may file an amended complaint as

to Defendants Heisel, Gehl, Larson, and John Does 1-3.  If Hartsoe chooses not to

file an amended complaint he must file a notice with the Court indicating he wishes

to proceed with his initial Complaint.

3.  The Clerk of Court is directed to provide Hartsoe a form for filing an

amended complaint.

Further, the Court issues the following:

## RECOMMENDATIONS

1.  All claims set forth in paragraphs 25, 27-32, and 34-36 of the Complaint

should be dismissed.

2.  Defendants Christopher, Wall, Russell, Maughan, Todd, Throden, and

Van Skyock and all claims against them should be dismissed.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Hartsoe may serve and file written

objections to these Findings and Recommendations within fourteen (14) days of

the date entered as indicated on the Notice of Electronic Filing.  As this deadline

allows a party to act after the Findings and Recommendations is served, it falls

under Fed.R.Civ.P. 6(d).  Therefore, three (3) days are added after the period

would otherwise expire.

Any such filing should be captioned "Objections to Magistrate Judge's

Findings and Recommendations."

A district judge will make a de novo determination of those portions of the

Findings and Recommendations to which objection is made.  The district judge

may accept, reject, or modify, in whole or in part, the Findings and

Recommendations.  Failure to timely file written objections may bar a de novo

determination by the district judge and may waive the right to appeal the District

Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

This order is not immediately appealable to the Ninth Circuit Court of

Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed

until entry of the District Court's final judgment.

DATED this 4th day of March, 2011.


 */s/ Jeremiah C. Lynch*
Jeremiah C. Lynch
United States Magistrate Judge